133 F.3d 929
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Karen TSATOURIAN, a.k.a. Karin Tsatourian, Petitioner,
v.
IMMIGRATION and NATURALIZATION SERVICE, Respondent.
 Nos. 96-70804, Agk-zku-tiz.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 12, 1997.**
Decided Dec. 31, 1997.
 
 Petition to Review Order of the Board of Immigration Appeals.
 Before: ALDISERT,*** D.W. NELSON, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Karen Tsatourian, an Ethnic Armenian from the Republic of Azerbaijan, petitions for review of the Board of Immigration Appeals (BIA) dismissal of his appeal from the immigration judge's (IJ) decision to deny his application for asylum and withholding of deportation, pursuant to 8 U.S.C. § 1158(a) and § 1253(h) The BIA concluded that the harm Tsatourian had suffered in Azerbaijan did not amount to past persecution. The BIA also found that Tsatourian had been firmly resettled in the Republic of Armenia and consequently was barred from eligibility for asylum under 8 C.F.R. § 208.14(d)(2). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we affirm the BIA's dismissal.
 
 
 3
 The BIA's determination that an alien is ineligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence in the record. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Astzero v. INS, 104 F.3d 264, 265 (9th Cir.1996). The BIA's decision whether to withhold deportation also is reviewed for substantial evidence. Mejia-Paiz v. INS, 111 F.3d 720, 722 (9th Cir.1997).
 
 1. Firm Resettlement
 
 4
 The BIA, like the IJ and Asylum Officer before it, found Tsatourian ineligible for asylum in part because he had resettled in Armenia after fleeing Azerbaijan. An alien who has "firmly resettled" in another country after leaving his or her homeland is categorically ineligible for asylum in the United States. 8 C.F.R. § 208.14(d)(2); see also Yang v. INS, 79 F.3d 932, 939 (9th Cir.), cert. denied, 117 S.Ct. 83, (1996) (holding that Section 208.14(d)(2) does not violate the letter or spirit of its enabling statute, 8 U.S.C. § 1158(a)). The applicable regulation defines "firm resettlement" as follows:
 
 
 5
 An alien is considered to be firmly resettled if, prior to arrival in the United States, he entered into another nation with, or while in that nation received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement....
 
 
 6
 8 C.F.R. § 208.15. The regulation sets forth two exceptions to this provision, stating that an alien should not be considered firmly resettled if either (1) the alien lacked "significant ties" to the other country, remaining there only long enough to arrange onward travel, or (2) significant restrictions were placed by the country's government on the alien's capacity to live and work there. Id.
 
 
 7
 The administrative record provides substantial evidence in support of the BIA's determination that Tsatourian resettled in Armenia. Although Tsatourian's stay in Armenia was relatively brief--only a few months--Tsatourian testified that he had the legal right to remain there if he chose to do so. Moreover, in a recent report, the United States State Department observed that "[t]he Government of Armenia has offered residence permits to refugees from Azerbaijan proper, who are assumed to be permanent residents of Armenia." As a former resident of Azerbaijan, Tsatourian presumably was entitled to permanent residence in Armenia Thus, Tsatourian meets the basic definition of "firmly resettled."
 
 
 8
 Tsatourian has failed to establish, moreover, that his case falls under either of the exceptions noted above. Although Armenia's economy is troubled and apparently offers limited employment opportunities, Tsatourian encountered no more difficulty finding work than others there. Indeed, through his trading business (which he operated while living in Russia but which involved trade between the two countries), he was able not only to earn a living but also to give his parents some financial support. Tsatourian also has ties to Armenia: His mother resides there, and he travelled to the United States on an Armenian passport. While Tsatourian has testified that he is unable to reenter Armenia, that testimony is contradicted by State Department reports. Moreover, the plain words of Section 208.15 focus not on whether the alien currently is entitled to enter the country of resettlement, but rather on whether he or she was resettled prior to his or her arrival in the United States. See 8 C.F.R. § 208.15; see also Abdalia v. INS, 43 F.3d 1397, 1400 (10th Cir.1994). Accordingly, we affirm the BIA's determination that Tsatourian is ineligible for asylum on account of his firm resettlement in Armenia.
 
 2. Withholding of Deportation
 
 9
 Although Tsatourian is statutorily barred from seeking asylum, he remains eligible for withholding of deportation if he can establish that it is "more likely than not" that he would be persecuted if returned to the proposed country of deportation. See 8 C.F.R. § 208.16(b). Tsatourian has designated Russia and Armenia as the countries to which he would prefer to return if deported. The INS has agreed to those choices. Tsatourian offers no evidence that he would face persecution if returned to one of those countries, and the record confirms that he could live peacefully in either place. We therefore hold that the BIA's determination that Tsatourian is ineligible for withholding of deportation is adequately supported by the record.
 
 3. Past Persecution
 
 10
 Due to our finding of firm resettlement, we need not address the merits of Tsatourian's asylum claim. Nevertheless, we note that the BIA incorrectly decided that the harm Tsatourian suffered in Azerbaijan does not amount to past persecution. Curiously, although the BIA acknowledged that Tsatourian was detained and beaten, and that his family's house was ransacked, it found that those incidents did not constitute persecution. In support of its conclusion, the BIA pointed out that Tsatourian "was nearer temporarily or permanently injured on account of these incidents. He never required medical attention, nor did he subsequently alter his lifestyle in any meaningful way." The BIA's findings are contradicted by the record. Tsatourian testified that he was beaten on several occasions on account of his Armenian ethnicity. On one of those occasions, several of his teeth were knocked out. Tsatourian also testified that, after his parents left Azerbaijan, he was forced to take refuge in friends' homes before fleeing the country in December 1991. In view of this testimony, the credibility of which is not in dispute, it seems unreasonable for the BIA to have determined that Tsatourian was never injured and did not "alter his lifestyle in any meaningful way."
 
 
 11
 The BIA's legal conclusions are also misplaced. The BIA cites no case supporting its proposition that an alien must have been hospitalized or permanently disabled in order to prove past persecution. Prasad v. INS, 47 F.3d 336 (9th Cir.1995), which the Government cites in its brief on appeal, is readily distinguishable. In Prasad, a Fijian national was detained and beaten once on account of his political opinion, and his relatives remained in the country unharmed after his departure. Id. at 339. Tsatourian, in contrast, was beaten three times, once in his own home, and all of his relatives have fled Azerbaijan. We have defined "persecution" to mean "the infliction of suffering or harm upon those who differ ... in a way regarded as offensive." Id. (citations omitted). While we ascribe considerable deference to the BIA's findings of fact, see Prasad, 47 F.3d at 338-39, a reasonable factfinder would seem compelled to conclude that under this definition of persecution, Tsatourian suffered past persecution in Azerbaijan on account of his ethnicity.
 
 
 12
 Nevertheless, because Tsatourian was firmly resettled in Armenia, we affirm the BIA's dismissal of Tsatourian's appeal.
 
 
 13
 PETITION DENIED.
 
 
 
 **
 The panel unanimously find this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34--4
 
 
 **
 * The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3