**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KONGLE,
Petitioner,

v.

No. 97-2027

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order of the
Board of Immigration Appeals.
(A70-021-298)

Submitted: January 6, 1998

Decided: January 23, 1998

Before WILKINS, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Donald L. Schlemmer, Washington, D.C., for Petitioner. Frank W.
Hunger, Assistant Attorney General, Karen Fletcher Torstenson,
Assistant Director, Lisa R. Graves, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this petition for review, Petitioner Kongle seeks review of an order of the Board of Immigration Appeals ("the Board") dismissing his appeal from a denial of his application for asylum and withholding of deportation. Finding no error, we affirm the Board's order.

Kongle is internationally known as a leader of the expatriate Laotian community and has been active in anti-government resistance activities.* Kongle, a native and citizen of Laos, fled that country in 1966 when the government collapsed. With the aid of President Charles de Gaulle, Kongle entered France in 1967. Kongle contends that French government officials warned Kongle to avoid speaking out about the political situation in Laos. President de Gaulle interceded and told Kongle that he could involve himself in Laotian politics. However, after President de Gaulle's death, the French government resumed putting pressure on Kongle. His activities have been closely monitored by French police.

Kongle had French resident status and a French Resident Card. As a resident, he was permitted to travel anywhere in France and was entitled to work in any profession. Kongle was offered the opportunity to be a citizen of France on many occasions; however, he rejected the offers.

Kongle has traveled extensively throughout the world. In 1979, Kongle went to the People's Republic of China to obtain the assistance of the Chinese government in his efforts to overthrow the Laotian government. In 1985, Kongle visited Japan for three months. Initially, the French police prevented him from leaving. However, upon intervention by the Japanese Minister of Foreign Affairs,

_____

*Kongle is petitioner's first and last name.

2

Kongle was free to go. Although he was informed by French police that he could no longer travel, Kongle visited Belgium, Germany and Switzerland with no problems upon reentry.

In 1988, Kongle received a non-immigrant visa to visit the United States. He entered the United States in October 1988 with a French Refugee Travel Document. He was allowed to visit the United States until October 17, 1991. However, he did not leave in 1991. Kongle submitted a request to the United States for asylum from Laos in 1992 and, in 1994, he requested asylum from France.

His refugee travel document expired in May 1991, and there is no evidence that he applied to extend the period of validity. Kongle's French Resident Card was valid until May 1997. Under French law, an alien resident loses his right to return to France as a resident if he leaves the country for more than three consecutive years and does not timely file a renewal request or request an extension while abroad. Accordingly, Kongle cannot return to France as a resident alien. If he returned, he would be required to file a new application as an immigrant.

An immigration judge ("IJ") denied his request for asylum from France and Laos as well as his request for withholding of deportation to France and Laos. The IJ did grant Kongle's request for voluntary departure. On appeal, the Board dismissed all parts of Kongle's appeal except his claim regarding withholding of deportation to Laos. The Board granted Kongle's application for withholding of deportation on the basis that there was a clear probability of persecution if he returned there. The Board found that Kongle was firmly resettled in France and as such was not entitled to asylum from Laos. The Board also found that he was not entitled to asylum from France because it was not his native country and he had not established a clear likelihood of persecution by the French government.

Under 8 C.F.R. § 208.14(d)(2) (1997), an application for asylum shall be denied if the applicant has firmly resettled in another nation. An applicant is firmly resettled if, "prior to arrival in the United States, he entered into another nation with, or while in that nation, received an offer of permanent resident status, citizenship, or some other type of permanent resettlement." See 8 C.F.R. § 208.15 (1997).

3

To avoid a finding that an applicant has firmly resettled elsewhere, the applicant can establish the following:

> (a) That his entry into that nation was a necessary consequence of his flight from persecution, that he remained in that nation only as long as was necessary to arrange onward travel, and that he did not establish significant ties with that nation; or
>
> (b) That the conditions of his residence in that nation were so substantially and consciously restricted by the authority of the country of refuge that he was not in fact resettled. In making his determination, that Asylum Officer or Immigration Judge shall consider the conditions under which other residents of the country live, the type of housing made available to the refugee, whether permanent or temporary, the types and extent of the employment available to the refugee, and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation including a right of entry and/or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.

8 C.F.R. § 208.15 (1997).

This Court's review of the Board's decisions is"narrow, not broad." See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). A decision must be upheld if it is supported by substantial evidence. Id. This Court may reverse the Board only if the evidence is so compelling that no reasonable factfinder could fail to find that he was not firmly resettled. Id.

Kongle admitted that he had been offered French citizenship many times. Kongle contends that his refusal shows his unwillingness to settle in that country. However, the burden is on Kongle to show more than his unwillingness to settle. He must show that his residence was restricted. In light of the considerations listed in 8 C.F.R. § 208.15(b), there was substantial evidence to support the Board's determination.

4

There was no evidence that he remained in France merely long enough to make arrangements to travel onward. Furthermore, he was allowed to travel throughout the world for long periods of time. He was also permitted to work and travel throughout France. While Kongle stated that he was under the intrusive eye of the French police due to his leadership role in the Laotian resistance movement, he did not show how his activities were restricted.

Furthermore, the possibility that Kongle may not be permitted to return to France because he allowed his resident card to expire is irrelevant to the Board's findings. As the Board noted, 8 C.F.R. § 208.15 concerns his status prior to his arrival in the United States. See Abdalla v. INS, 43 F.3d 1397, 1400 (10th Cir. 1994). Events that occurred after his arrival in this country cannot rebut the finding of firm resettlement. Moreover, Kongle's dilemma is of his own doing.

The mandatory bar to asylum for applicants who have been found to have resettled is a permissible construction of the statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984); see also Yang v. INS, 79 F.3d 932, 937-39 (9th Cir.), cert. denied, ___ U.S. #6D6D 6D#, 65 U.S.L.W. 3221, 65 U.S.L.W. (U.S. Oct. 7, 1996) (No. 95-2065). Although the granting of asylum is discretionary under 8 U.S.C.A. § 1158(a) (West Supp. 1997), the Attorney General can rely on rules that have general application. See American Hosp. Ass'n v. NLRB, 499 U.S. 606, 612 (1991). Moreover, the issue of whether an asylum applicant has resettled has always been an important consideration when considering the application. See Rosenberg v. Yee Chien Woo, 402 U.S. 49, 54-55 (1971).

Before the Board, Kongle did not argue, as he does now, that asylum should be granted because he is stateless. Generally, an alien who has failed to raise claims to the Board has waived his right to raise those claims before a federal court on appeal. See Farrokhi v. INS, 900 F.2d 697, 700 (4th Cir. 1990). In any event, Kongle is unable to demonstrate that he has a well-founded fear of persecution if he returns to France. See Faddoul v. INS, 37 F.3d 185, 190 (5th Cir. 1994) (a stateless asylum applicant must make same showing as an applicant with a nationality). There was substantial evidence supporting the Board's finding that he would not face persecution if he returned to France. Likewise, the contention that asylum should be

5

granted under the principle of return expectations was not raised on appeal before the Board and is therefore waived.

For the foregoing reasons, we affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6