10-1953-ag
Tchitchui v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: May 16, 2011                    Decided: September 19, 2011)

Docket No. 10-1953-ag

_____

ETIENNE TCHITCHUI,

Petitioner,

v.

ERIC H. HOLDER, JR., United States Attorney General

Respondent.

_____

Before: CABRANES, RAGGI, Circuit Judges, and RESTANI, Judge.[*]

_____

Etienne Tchitchui petitions for review of an April 13, 2010 order of the Board of

Immigration Appeals affirming a June 5, 2008 decision of the Immigration Judge denying him

asylum, but granting his application for withholding of removal.  Tchitchui argues that the IJ

erred in finding that he had been "firmly resettled" in a third country before applying for asylum

in the United States.  We DENY Tchitchui's petition for review.

_____

[*] The Honorable Jane A. Restani, Judge of the United States Court of International Trade,
sitting by designation.

ELIZABETH M. DOWD (Katherine Z. Machan and Anna Greene, on the briefs), Linklaters LLP, New York, NY, for Petitioner.

ANN M. WELHAF, Trial Attorney, Office of Immigration Litigation (Tony West, Assistant Attorney General, Civil Division and Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, on the brief), U.S. Department of Justice, Civil Division, Washington, D.C., for Respondent.

PER CURIAM:

An alien's "firm resettlement" in a third country prior to arrival in the United States bars the alien from obtaining asylum here. See 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.15. On this petition for review of an order of removal, we are asked to consider whether the government's prima facie showing of firm resettlement may be rebutted by an alien's showing that his ties to the third country into which he fled before coming here were formed before his last flight from persecution. See 8 C.F.R. § 208.15(a). We concluded that firm resettlement is determined from the totality of the circumstances, and that even ties formed in the third country prior to an alien's last flight from persecution are relevant to that determination. Accordingly, we deny this petition for review.

The following facts, derived from findings made by the Immigration Judge ("IJ") at the asylum hearing, are undisputed before this court. Etienne Tchitchui, a thirty-nine year old native and citizen of Cameroon, is openly a member of the Social Democratic Front ("SDF"), the main opposition to the ruling party, the Cameroon People's Democratic Movement. In the late 1990s, Tchitchui's family members, who were concerned about his association with the SDF, encouraged him to leave Cameroon. In 1999, Tchitchui accepted his uncle's offer to finance his relocation and went to Chile, where he resided for a year and a half while studying Spanish. In 2001, Tchitchui traveled directly from Chile to Guatemala and opened an internet café. He

2

remained in Guatemala for approximately a year before returning to Cameroon, so that he could support the SDF's efforts in the upcoming 2002 elections. Tchitchui arrived in Cameroon in May 2002, but within four months, his family convinced him to leave. In September 2002, Tchitchui returned to Guatemala, where he continued to operate his small business.

Tchitchui remained in Guatemala for nearly three years. During this time, he sold his internet café for a profit, opened a restaurant, and obtained permanent resident status. Sometime in 2005, Tchitchui visited his family in Cameroon and attempted to convince them that he should move back to that country. As a result of the increasingly tense political climate in Cameroon, however, he was unable to gain support for his plan. Thus, Tchitchui returned to Guatemala and continued his life there.

In December 2005, Tchitchui returned to Cameroon for three weeks. On January 13, 2006, he and his family were seized by the police. Tchitchui was detained for four days, during which time he was repeatedly beaten by the officers, who indicated that their actions were a result of his affiliation with the SDF. Upon his release, Tchitchui returned to Guatemala, where he remained for approximately eight weeks. During this time, he sold his restaurant business and applied to a culinary program in the United States. On March 25, 2006, Tchitchui legally entered the United States as a non-immigrant visitor with authorization to remain for a temporary period of time.

Tchitchui overstayed his visa, so that in May 2007, the Department of Homeland Security ("the government") charged Tchitchui with removability pursuant to the Immigration and Nationality Act. Tchitchui responded by applying for asylum and withholding of removal. Upon consideration of his application, the IJ denied Tchitchui asylum, concluding that he was

3

mandatorily barred as he had firmly resettled in Guatemala prior to arriving in the United States, but granted him withholding of removal to Cameroon. Tchitchui appealed, but the Board of Immigration Appeals ("BIA") affirmed the IJ's decision. Tchitchui now petitions for review.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction pursuant to 8 U.S.C. § 1252(b). In an immigration case, "[w]here an issue involves the application of law to undisputed fact, we review the issue de novo . . . ." Corovic v. Mukasey, 519 F.3d 90, 95 (2d Cir. 2008). In the event that "the BIA adopts the IJ's reasoning and offers additional commentary, we review the decision of the IJ as supplemented by the BIA." Dobrova v. Holder, 607 F.3d 297, 300 (2d Cir. 2010) (internal quotation marks omitted). "While the BIA's interpretation of immigration statutes is generally entitled to Chevron deference, interpretations in non-precedential unpublished BIA decisions, as in the instant case, are not so entitled."[1] Id.

**DISCUSSION**

The Immigration and Nationality Act provides that asylum "may" be granted "to an alien who has applied for asylum . . . if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee." 8 U.S.C. § 1158(b)(1)(A); see Liao v. Holder, 558 F.3d 152, 157 (2d Cir. 2009). The act, however, also places a mandatory bar on the grant of asylum if

---

[1] We need not, and do not, resolve whether such unpublished decisions are entitled to Skidmore deference, because our de novo review of the IJ's decision as supplemented by the BIA reveals no error. See Varughese v. Holder, 629 F.3d 272, 274 (2d Cir. 2010); compare Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–44 (1984), with Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

4

an applicant "was firmly resettled in another country prior to arriving in the United States."  8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.13(c)(2)(i)(B); Liao, 558 F.3d at 157; see Salazar v. Ashcroft, 359 F.3d 45, 49 (1st Cir. 2004).  The regulations provide a definition of firm resettlement, stating that "[a]n alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement . . . ."  8 C.F.R. § 208.15.

The government bears the initial burden of establishing a prima facie case of firm resettlement by a totality of the circumstances.  Makadji v. Gonzales, 470 F.3d 450, 455 (2d Cir. 2007); Sall v. Gonzales, 437 F.3d 229, 233–34 (2d Cir. 2006) (per curiam); see also Mussie v. INS, 172 F.3d 329, 331 (4th Cir. 1999).  Once the government has established a prima facie case, the burden shifts to the applicant to show that he or she qualifies for one of the two enumerated exceptions.  Makadji, 470 F.3d at 455; Sall, 437 F.3d at 234.  The first such exception requires an applicant to establish (1) "[t]hat his or her entry into that country was a necessary consequence of his or her flight from persecution," (2) "that he or she remained in that country only as long as was necessary to arrange onward travel," and (3) "that he or she did not establish significant ties in that country."  8 C.F.R. § 208.15(a); Liao, 558 F.3d at 158.  To qualify for this exception, an applicant must satisfy each of these three prongs.  Salazar, 359 F.3d at 51.  The second exception, which is not at issue here, requires an applicant to establish "[t]hat the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled."  8 C.F.R. § 208.15(b).

5

On the agency level, Tchitchui's application for asylum was denied because both the IJ and the BIA held that the government established a prima facie case of firm resettlement and that Tchitchui did not establish his eligibility for either exception. Specifically, the BIA reasoned that Tchitchui established "significant ties" in Guatemala "prior to arrival in the United States" considering the totality of the circumstances.[2] See 8 C.F.R. § 208.15. Tchitchui now challenges the legality of this determination, claiming that his ties to Guatemala prior to his departure from Cameroon on January 19, 2006, are irrelevant because he was not persecuted in Cameroon until January 13, 2006. In essence, Tchitchui argues that 8 C.F.R. § 208.15(a) limits the scope of the "significant ties" inquiry to his post-persecution conduct.[3] This claim lacks merit.

It is well established that the IJ and BIA should apply a "totality of the circumstances" test to firm resettlement determinations under 8 U.S.C. § 1158(b)(2)(a)(vi), the touchstone of which is whether the applicant has found an "alternative place[] of refuge abroad." Sall, 437

---

[2] Under regulations implementing the Immigration and Nationality Act:

An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she establishes:
    (a) That his or her entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country; or
    (b) That the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled . . . .

8 C.F.R. § 208.15.

[3] Tchitchui does not argue that the government failed to establish a prima facie case of firm resettlement or that he qualified for the second exception under 8 C.F.R. § 208.15(b). Rather, his petition is limited to the issue of the first exception, found at 8 C.F.R. § 208.15(a).

6

F.3d at 232–33. As we observed in Liao, this test embodies "the purpose of the regulations, which is to provide refuge to desperate refugees who reach our shores with nowhere else to turn." 558 F.3d at 157 (internal quotation marks omitted). The totality of Tchitchui's activities in Guatemala including those in 2001 to December 2005, therefore, are relevant to the question of whether his permanent residency in Guatemala created a place to turn to seek refuge when he fled Cameroon.

We agree with our sister circuits that the temporal reference, "prior to arrival in the United States," in 8 C.F.R. § 208.15, which is borrowed almost directly from the statutory language in 8 U.S.C. § 1158(b)(2)(A)(vi), applies to all subsequent language in the regulation, including the third prong of the exception at issue here. Cf. Abdalla v. INS, 43 F.3d 1397, 1400 (10th Cir. 1994) (considering "longstanding and significant family ties in the UAE"); Sultani v. Gonzales, 455 F.3d 878, 880–83 (8th Cir. 2006) (considering petitioner's application for refugee status, which was made before flight from persecution); Ali v. Reno, 237 F.3d 591, 592–95 (6th Cir. 2001) (considering Denmark's grant of refugee status, which was obtained by petitioner during her flight from persecution). Tchitchui has not pointed us to any statutory or regulatory language or to any rule of construction that supports a narrower reading of the temporal reference. A plain reading of the statutory language, therefore, means that "did not establish" in the third prong of the first exception refers to "significant ties" to a third country "prior to [the alien's] arrival in the United States." 8 C.F.R. § 208.15. The third prong of the exception does not contain the words "post-persecution, post-flight" or their equivalent, the limitation that the petitioner asserts. See Pet'r's Br. 29; see 8 C.F.R. § 208.15(a). Rather, only the first prong refers to the "necessary consequence of [an alien's] flight from persecution." 8 C.F.R.

7

§ 208.15(a). Thus, like our sister circuits, we treat these prongs as separate inquiries. See

Salazar, 359 F.3d at 51; see also Mussie, 172 F.3d at 332. To do otherwise would allow the

exception to swallow entirely the disqualifying condition for asylum to which it applies.

Similarly, the interpretation Tchitchui urges of 8 C.F.R. § 208.15(a), under which contact

that preceded his persecution in Cameroon could not establish "significant ties" to Guatemala,

would undermine the core regulatory purpose of asylum, which is "not to provide [applicants]

with a broader choice of safe homelands," but rather, to "protect [refugees] with nowhere else to

turn." Sall, 437 F.3d at 233. This narrow purpose is expressed in the firm resettlement bar, id.,

and the exceptions enumerated under 8 C.F.R. § 208.15 must be equally circumscribed to that

end.

Thus, the past tense "did not establish significant ties in [another] country," 8 C.F.R.

§ 208.15(a) (emphasis added), requires consideration of all ties established by an alien in a third

country prior to entering the United States, including ties formed prior to the persecution giving

rise to the applicant's asylum claim. This conclusion is consistent with the restrictive

interpretation our sister circuits have assigned to other past tense language in 8 C.F.R.

§ 208.15(a)—specifically, that the regulation's focus on an alien's resettlement status "prior to"

arrival in the United States "preclude[s] . . . [the] alien from bootstrapping an asylum claim

simply by unilaterally severing [his or her] existing ties to a third country after arriving in the

United States." Abdalla, 43 F.3d at 1400; accord Sultani, 455 F.3d at 884; Firmansjah v.

Gonzales, 424 F.3d 598, 603–04 (7th Cir. 2005); Ali, 237 F.3d at 596.

Under a totality of the circumstances test, therefore, we examine all ties to Guatemala

that Tchitchui established prior to his arrival in the United States, including ties formed prior to

8

his persecution in Cameroon.  8 C.F.R. § 208.15(a); see Sall, 437 F.3d at 233.

While in Guatemala, Tchitchui had ongoing business activities, could work and travel at will, and had permanent residency status.  These circumstances demonstrate that Tchitchui established significant ties to Guatemala, a country that afforded him a safe haven from his persecution in Cameroon.  See Sall, 437 F.3d at 233 ("The United States offers asylum to refugees not to provide them with a broader choice of safe homelands, but rather, to protect those arrivals with nowhere else to turn.").  The fact that "Guatemala was not a place in which [Tchitchui] felt safe or where he had any desire to settle," does not defeat the bar to asylum based on persecution in Cameroon.  See Pet'r's Br. 12.  Moreover, as the IJ noted, the fact that Tchitchui's permanent residency in Guatemala expired during the pendency of his removal proceedings in the United States is not relevant to the question of whether he is eligible in the United States for asylum from Cameroon.  See, e.g., Sultani, 455 F.3d at 883–84 ("[T]he possibility that [an applicant for asylum] may not be permitted to return to [a third country] because [he] allowed [his] status in that country to expire is irrelevant to the finding that [he was] firmly resettled in [that country]"); Firmansjah, 424 F.3d at 604 (holding that expiration of permanent residency in a third country after entry into the United States does not alter the determination that an applicant was firmly resettled "prior to" arrival in the United States).  Accordingly, Tchitchui is ineligible for asylum under the exception to firm resettlement in 8 C.F.R. § 208.15(a).[4]

---

[4] The BIA has concluded that Tchitchui is entitled to withholding of removal to Cameroon because he has sufficiently demonstrated a "clear probability of persecution on account of a statutorily-protected ground."  Baba v. Holder, 569 F.3d 79, 84 (2d Cir. 2009) (citing 8 U.S.C. § 1231(b)(3)).  As a result, the practical consequence of the IJ's order, which is

(continued...)

9

## CONCLUSION

We have considered all of Tchitchui's arguments and find them to be without merit. For the reasons stated above, the petition for review of the BIA's April 13, 2010 decision is DENIED.

---

[4](...continued)
effected through our holding today, is that Tchitchui is in the awkward position of being unable to obtain asylum in the United States, nor will he be sent back to Cameroon. What the law of Guatemala will permit now is not of record and we do not consider it. Although this statutory scheme may yield odd results, it is not the province of this court to rewrite the law.