F I L E D
**United States Court of Appeals
Tenth Circuit**

**JUL 8 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JEAN RONALD SAUVEUR,
also known as Michel Urie,

Petitioner,

v.

JOHN ASHCROFT,

Respondent.

No. 02-9584
(BIA No. A77-003-389)
(Petition for Review)

**ORDER AND JUDGMENT** *

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Jean Ronald Sauveur petitions for review of a decision of the Bureau of

Immigration Appeals (BIA) affirming the immigration judge (IJ)'s order denying

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his application for asylum, withholding of deportation, and relief under the Convention Against Torture. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(ii), and deny the petition.

Sauveur is a citizen and native of Haiti, who attempted to enter the United States in 1999 using a false passport. He has conceded removability from this country. At the hearing before the IJ, Sauveur testified as follows:

In 1990, Sauveur supported a political group known as the FNCD. This group favored Jean-Bertrand Aristide, who was elected president of Haiti in 1991. Aristide was deposed as the result of a military coup, but was returned to power three years later with the assistance of the United States Army.

In October 1998, Sauveur helped organize a youth group known as OGDP in Port-au-Prince, the capital of Haiti. The group was not affiliated with any political party. It started with fifteen members, and eventually grew to thirty-five members. The group sought to help youth "to be aware of their rights, to talk about the country's constitution" and social, economic and cultural issues. Admin. R. at 60. Sauveur served as its secretary.

On November 10, 1998, five or six unidentified armed men in civilian clothing forced their way into an OGDP meeting and started shooting in the air. The men beat participants at the meeting and threatened them. Sauveur did not

report this incident to the police, because he was afraid and did not know who the men were.

On December 3, 1998, an OGDP meeting was again interrupted by people who beat the group's members and kidnaped their treasurer. Sauveur was injured during the beating. The treasurer was later located at the local police department.

After the second time an OGDP meeting was disrupted, Sauveur and other members of the OGDP wrote a letter to a police commissioner, who promised to provide security for their future meetings. On February 1, 1999, the OGDP held another meeting. Contrary to expectation, the police did not arrive. Instead, shortly after the meeting began, a group of civilians arrived, accused members of OGDP of speaking against the government, and began shooting in the air and beating the OGDP members. One of this group of men approached Sauveur, armed with a knife. Sauveur pushed the man over and escaped through a window. He spent the next twenty days in hiding.

Sauveur later learned that some men had gone to his house and beat his cousin, trying to force him to reveal Sauveur's location. Sauveur left Haiti on February 20, using a photo-switched French passport in the name of "Michel Urie." His group, the OGDP, no longer exists in Haiti.

Sauveur raises two issues in his petition for review. He contends that the IJ violated his right to due process by considering and relying upon State

Department country reports that were not made part of the record. He also contends that the IJ and the BIA erred as a matter of law in finding that he failed to meet his burden of proving that he suffered past persecution sufficient to qualify him as a refugee.

Although at the administrative level Sauveur sought withholding of deportation and relief under the Convention Against Torture, his arguments here focus exclusively on his asylum claim. To be eligible for asylum, an alien must first establish his status as a "refugee." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004). To establish refugee status, the applicant must demonstrate that he has suffered past persecution or has "a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Aliens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Wiransane*, 366 F.3d at 893 (quotation omitted).

We review the BIA's factual findings for substantial evidence in the record. *Nguyen v. INS*, 991 F.2d 621, 625 (10th Cir. 1993). The BIA's findings of fact are conclusive unless the record demonstrates that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

We will not reverse the agency's decision unless the evidence compels the conclusion that petitioner has a well-founded fear of persecution because of one of the protected grounds. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

Sauveur contends that the IJ erred in relying on the 1998 and 2000 State Department Country Reports for Haiti without receiving them into evidence or making them available to him or his counsel at or prior to the hearing. Sauveur did not raise this argument before the BIA. Therefore, it is waived. *Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991).

Sauveur also argues that the agency's determination that he failed to show past persecution is not supported by substantial evidence. He attacks findings made by both the BIA and the IJ. Since the BIA issued a reasoned determination rather than summarily affirming the IJ, however, our review is limited to the BIA's decision. *Compare Rivera-Jimenez v. INS*, 214 F.3d 1213, 1216 (10th Cir. 2000) ("Our review is limited to the decision of the BIA, and not that of the immigration judge") *with Wiransane*, 366 F.3d at 897 (stating that in summary affirmance cases, this court examines IJ's reasoning).

The BIA gave several reasons for rejecting Sauveur's claims of past persecution and well-founded fear of future persecution. It noted that (1) his various accounts of his problems in Haiti were not entirely consistent; (2) he had

not testified to fear of Haitian governmental authorities; (3) his group no longer exists in Haiti; (4) he escaped physical harm and failed to show actual past persecution; and (5) he failed to show a reasonable possibility of future persecution by non-governmental forces throughout Haiti.

Sauveur contends that the BIA failed to address the lack of police protection for his group. "Persecution" under the asylum statute means not only persecution by the government but also by a non-governmental group that the government is "unwilling or unable to control." *Batalova v. Ashcroft*, 355 F.3d 1246, 1253 (10th Cir. 2004) (quotation omitted). Sauveur does not contest the BIA's specific finding that the attacks he described, regardless of who perpetrated them, did not rise to the level of past persecution. All of the attacks and threats that Sauveur received were as the result of his participation in the OGDP, which no longer exists. He fails to show that the BIA committed reversible error in concluding that he had not demonstrated a well-founded fear of future persecution.

The petition for review is DENIED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge

-6-