**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ESTHER MARTHA RUMAJAR,

Petitioner,

v.

ALBERTO R. GONZALES, United
States Attorney General,

Respondent.

No. 06-9561
(No. A79-286-688)
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **McCONNELL**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

Petitioner Esther Martha Rumajar is a native and citizen of Indonesia. She

challenges an order of the Board of Immigration Appeals (BIA) summarily

affirming the decision of an Immigration Judge (IJ) denying her application for

asylum. She challenges the IJ's findings that she did not suffer past persecution

in Indonesia; that she does not have a well-founded fear of future persecution if

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

returned to Indonesia; and that she could escape persecution if returned to Indonesia by safely relocating to the city of Manado, where she grew up and where her parents still live. She further argues that the IJ erred in failing to consider whether the government, while "willing" to control violence against Chinese Christians in Indonesia, is "unable" to do so. We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition for review.

## I. Background

Ms. Rumajar was admitted to the United States on January 29, 2001, on a nonimmigrant visa, with authorization to remain for six months. She overstayed her visa, married an Indonesian also present in the United States and had a child by him.[1]

On May 4, 2001, she submitted an application for asylum, restriction on removal, and CAT relief. In the application, she identified herself as a Christian of Chinese descent. According to Ms. Rumajar, these two characteristics place her at the risk of severe persecution at the hands of Muslim Indonesians. She related a number of incidents in which she, members of her family, and other Chinese Christians in Indonesia experienced religious and ethnic animosity, including assaults, robberies, rapes, murders, and church-burnings.

---

[1]     Her husband is not included in her application and it appears that he has filed a separate application for asylum.

-2-

On December 19, 2003, Ms. Rumajar was issued a notice to appear before an IJ to show cause why she should not be removed from the United States for overstaying her visa. She conceded the charge, and a hearing was scheduled on her asylum application. At the hearing, held March 14, 2005, she presented testimony concerning incidents of religious and ethnic violence she and other Chinese Christians had suffered in recent years in Indonesia, along with numerous news reports and government documents concerning ethnic and religious turmoil in that country. The IJ obtained and reviewed the most recent State Department report on human rights practices in Indonesia.

In his oral decision, the IJ denied Ms. Rumajar's application and ordered her removed to Indonesia. Although he found her testimony credible, he noted that the "outbreak of ethnic and religious violence in the late 1990s . . . has calmed down considerably" and that "instances of discrimination and harassment of ethnic Chinese Indonesians [has] declined compared with previous years." Admin. R. at 72 (quotation omitted). The IJ stated that although the Indonesian government does not persecute Chinese Christians, the background material Ms. Rumajar submitted supported her contention that "the police have been mostly ineffective in trying to protect the Chinese population in Indonesia" from their Muslim persecutors. *Id.* He did not, however, find that she had alleged facts which amounted to past persecution. Even if she had, the IJ further

determined that she could relocate internally in Indonesia to the city of Manado and thereby avoid persecution, and that it was reasonable for her to do so.

Ms. Rumajar appealed to the BIA, which affirmed without opinion. She then petitioned this court for review. She seeks review only of the agency's determination on asylum and does not challenge its denial of her applications for restriction on removal, CAT protection, and voluntary departure. *See* Aplt. Br. at 12.

## II. Discussion

The BIA's summary affirmance of the IJ's decision makes the IJ's decision the final agency determination for purposes of our review. *Tulengkey v. Gonzales*, 425 F.3d 1277, 1279 (10th Cir. 2005). We review the IJ's factual findings for substantial evidence. *Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1046 (10th Cir. 2004). His factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review the IJ's legal conclusions de novo. *Hadjimehdigholi v. INS*, 49 F.3d 642, 647 (10th Cir. 1995).

"To be eligible for asylum, an alien must show that she has suffered past persecution or has 'a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.' 8 U.S.C. § 1101(a)(42)(A)." *Tulengkey*, 425 F.3d at 1280. The showing of past persecution "establishes a presumption of well-founded fear of

future persecution on the same basis as established for the original persecution."
*Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005).

Even if we assume that the incidents related by Ms. Rumajar constituted past persecution, a finding of past persecution only creates a presumption that the alien would be subject to further persecution if returned to her country of nationality. *See id.* at 1194. The agency may rebut this presumption by proving that the alien could avoid future persecution by relocating to another part of her country of nationality, and that it would be reasonable for her to do so. *Id.* at 1195.[2] Also, regardless of past persecution, "an alien does not have a well-founded fear of [future] persecution if the applicant could avoid persecution by relocating to another party of the applicant's country of nationality . . . [and] if under all the circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.13(b)(2)(ii).

_____

[2] Specifically, the applicable regulation provides that an IJ

> in the exercise of his or her discretion, shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if [he finds] by a preponderance of the evidence [that]:
>
> [. . .]
>
> (B) The applicant could avoid further persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 1208.13(b)(i)(B).

In her appellate brief in this court, Ms. Rumajar attacks the IJ's findings that she could safely relocate to Manado and that it would be reasonable for her to do so. Aplt. Br. at 17-22. But she did not challenge the IJ's findings on these issues before the BIA. *See* Admin. R. at 13-27. We therefore cannot consider her challenge here. *See Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991) ("Judicial review does not extend to points the alien could have made before the Board but did not."). Failure to mount an effective challenge to an IJ's relocation finding forstalls an asylum claim based either on past persecution, *see Niang*, 422 F.3d at 1195, or on a well-founded fear of future persecution, *see Tulengkey*, 425 F.3d at 1282. We must therefore affirm the IJ's denial of asylum.

The petition for review is DENIED.

Entered for the Court

Michael W. McConnell
Circuit Judge